JOHN L. CONGDON *v.* WALTER R. TORREY.

November Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 8, 1921.

*Specifications—Amendment at Trial—Prejudice to Defendant— Diligence to Avoid Prejudice—Limiting Cross-examination —Qualification of Expert for Court—Admissibility of Letter not Before Court not Considered—Exclusion of Question Broader Than Issue—Set-off—Mutuality of Demands—Set- off of Joint Debt Against Survivor of Joint Debtors—G. L. 2086 Applies to Hearings Before Court.* ·

1. A specification may be amended, even at the trial, by leave of the court, unless the defendant would be prejudiced thereby on account of surprise.

2. In such case, the disadvantage or prejudice arising from the amendment, and not the fact that the defendant is taken by surprise, is the important thing.

3. Where a defendant did not use proper diligence to save himself from prejudice arising from an amendment to plaintiff's specification at the trial, an exception to the court's allowance of the amendment will not be sustained.

4. It is not error to restrict the cross-examination of a witness, where it cannot be said that the right of cross-examination, itself, was impaired by the action of the court.

5. The qualification of a witness as an expert is ordinarily a preliminary question for the trial court and not reviewable; and the trial court's refusal to find that a witness was an expert will not be reviewed when it cannot be said as matter of law that the witness was an expert.

6. Where a letter objected to on the ground that it was unsigned and incompetent is not before the Supreme Court, it cannot be said that it was error to receive it in evidence.

7. Exclusion of evidence as to the value of property delivered, which was too broad because covering time a part of which was not in issue, was not error.

8. Although the rule that mutuality of demands is essential to the right of set-off precludes the setting off of a several debt against a joint one, yet, where one of two joint debtors dies and the obligation survives against the other, the debt may be set-off in an action against the survivor.

9. Although G. L. 1809 prohibits a claim as an offset unless it was due and payable when the writ was served, an amount found due defendant under a settlement with plaintiff and his wife before the writ was served may be set-off by defendant against the plaintiff after the death of plaintiff's wife, although it did not appear whether she died before or after the writ was served, as the defendant's debt became due and payable at the time of settlement.

10. The provisions of G. L. 2086, that, notwithstanding the judgment to account, any defence may be made before the auditor that might have been answered in bar of the action, apply to hearings before the court as well as to hearings before an auditor.

11.   Evidence, on an accounting, that the contract, under which plain-
tiff carried on a farm, required defendant to pay the expenses
and that any profit was to be equally divided between them,
and that the operation resulted in a loss, was sufficient to
sustain the court's finding that there was nothing due the
defendant.

ACTION OF CONTRACT.   Pleas, the general issue, notice of
special defences, and declaration in set-off with specification
thereunder.   Trial by jury at the June Term, 1919, Windsor
County, *Wilson,* J., presiding, of certain issues involved.   Ver-
dict for the plaintiff.   Thereupon the defendant filed a declara-
tion in account as to the other matters involved, and, judgment to
account having been entered, a trial by court was had thereon.
The Court found there was nothing due the defendant on account
of those matters.   Judgment for the plaintiff for the amount of
the verdict.   The defendant excepted.   The opinion states the
case.

*Roland E. Stevens* for the defendant.

*Raymond Trainor* for the plaintiff.

POWERS, J.   The defendant answered this action of contract
by filing a general denial, a notice of special defences, and a
declaration in set-off with a specification thereunder.   It was
agreed by the parties that the case should go to trial by jury on
the plaintiff's claim to recover on account of labor and cash paid
out for the defendant on a certain plumbing job, and the defend-
ant's claim in offset, excluding from the latter anything pertain-
ing to the arrangement under which the plaintiff carried on the
defendant's farm.   And it was further agreed that when the
jurors returned a verdict on that phase of the case submitted to
them, the defendant should file in offset a declaration in account
to cover the matters growing out of the arrangement for carry-
ing on the farm, that this phase of the case should be tried by the
court, and that whatever balance should be found due the defend-
ant from the plaintiff should be deducted from any sum found
for the plaintiff by the jury, and judgment be rendered accord-
ingly.   The trial by jury resulted in a verdict for the plaintiff
for $280.34.   Thereupon the defendant filed his declaration in

account, and, judgment to account having been entered, a trial by the court was had thereon which resulted in a finding that there was nothing due the defendant on account of the farm trade. Judgment for the plaintiff for the amount of the verdict was then entered, and the defendant brings the case here on exceptions.

After the trial before the jury began, the court allowed the plaintiff to amend his specification by adding thereto an item for cash paid for goods bought of parties at South Royalton, Vt. The defendant excepted on the ground that he would have no opportunity to "check these things up."

[1-3]   The office of a specification is, as defendant claims, to define the ground of recovery which the plaintiff proposes to maintain by evidence and to apprise the defendant of what he will have to meet at the trial. *Greenwood* v. *Smith,* 45 Vt. 37. By leave of the court it may be amended, even at the trial, unless the defendant would be prejudiced thereby on account of surprise. *Lewis* v. *Jewett,* 51 Vt. 378. The defendant admits that the matter of such amendments is ordinarily a matter of discretion, but he insists that it is an abuse of discretion to allow an amendment when the defendant will have no chance to meet the new claim, and he maintains that by this one he was so taken by surprise as to be prejudiced in his defence. It is not the mere fact that a party is taken by surprise in such cases that is to be considered; the disadvantage or prejudice arising therefrom is the important thing. This defendant, however, does not show that he used proper diligence to save himself from prejudice. He did not ask for a continuance in order that he might put himself in a position to meet the unexpected claim. See *Hemmenway* v. *Lincoln,* 82 Vt. 465, 73 Atl. 1073. Nor did he make any effort to procure the attendance of the tradesmen referred to. The record shows that the trial began in the afternoon of Thursday, August 7, 1919. This matter came up almost immediately. The case went to the jury about half-past eleven o'clock in the forenoon of the following Tuesday. Though the record shows that one of the men named was ill at the time this amendment was allowed, it does not show that the defendant did not have a fair opportunity to communicate with the parties at South Royalton, by telephone or otherwise, and to have them in court as witnesses before the trial closed, if their testimony would have been of value to him. The exception is not sustained.

[4]    There was no error in the ruling of the court restricting the cross-examination of the plaintiff regarding the amount of lead pipe used on the plumbing job.  The defendant was given a very generous opportunity to pursue the witness on this point, and it cannot be said that the right of cross-examination, itself, was impaired by the action of the court.  See *Pette's Admr.* v. *Old English Slate Quarry,* 90 Vt. 87, 96 Atl. 596.

[5]    Edgar Bourdon, a witness for the defendant, testified that he had had experience in taking up and laying down bathroom floors.  He was then asked to say from his experience how long it would take to lay the floor of the bathroom here in question.  Objection was made on the ground that the witness was not qualified to speak on that subject; the court refused to find that he was an expert, and sustained the objection.  The defendant excepted.  The question raised is ordinarily a preliminary one for the trial court and not reviewable.  *Maughan* v. *Burns' Est.,* 64 Vt. 316, 23 Atl. 583; *Brown* v. *Aitken,* 90 Vt. 569, 99 Atl. 265. Surely we cannot say as matter of law that this witness was an expert.  Indeed, at the trial the defendant's counsel said that he did not claim that he was an expert at floor laying, but only that he was *as* expert as a witness used by the plaintiff.

[6]    The defendant excepted to the admission of a paper marked Exhibit 3, which was offered and received as a letter written by the defendant to the plaintiff in regard to the business carried on between them.  The basis of the objection to this letter was that it was unsigned and incomplete.  The exhibit is not furnished us and we have been unable to obtain it, so we cannot say that it was error to receive it in evidence.  *State* v. *Hirsch,* 91 Vt. 330, 100 Atl. 877.

[7]    Wells C. Porter, manager of the Sharon creamery, was a witness for the defendant.  In direct examination he was asked to give the value of the milk and cream delivered at the creamery by the defendant from the farm in question.  Upon objection, this was excluded and the defendant excepted.  The inquiry was obviously too broad; it covered all the time during which the plaintiff occupied the farm, a part of which time he was the owner of it.  When this defect was pointed out and the question was restricted to the time during which the defendant owned the farm, the question was allowed, and the witness testified fully on that subject.  So the defendant obtained all the information that

was material to any issue in the case, and the ruling was without error.

[8, 9]   Under his plea in offset, the defendant offered in evidence a written contract between the plaintiff and his wife on the one side and the defendant on the other, which provided that an accounting should be had with regard to certain items therein specified.   And in connection with this writing, the defendant offered to show that this accounting was had in June, 1917, which was prior to Mrs. Congdon's death hereinafter referred to, and that it resulted in finding a balance due the defendant thereunder of $143.52, which had not been paid.   The plaintiff objected on the ground that this balance was inadmissible as an offset for lack of mutuality.   It was excluded and the defendant excepted.   Speaking broadly, mutuality of demands is essential to the right of set-off.   *Johnson* v. *Kelley,* 67 Vt. 386, 31 Atl. 849. And this rule precludes the setting off of a several debt against a joint one (*Clough, et ux.* v. *Clough,* 55 Vt. 360), or a joint debt against a separate one.   *Mintz* v. *Tri-county Natural Gas Co.,* 259 Pa. 477, 103 Atl. 285; *Snyder* v. *Spurr,* 33 Conn. 407; *Bridgham et ux.* v. *Tileston,* 5 Allen 371; 1 Tidd. Pr. *665; see *Blake* v. *Langdon,* 19 Vt. 485, 47 A. D. 701.   So, of course, in a suit by a husband, a debt due from him and his wife is not available as an offset.   *Richards* v. *Reed,* 6 Misc. Rep. 217, 26 N. Y. Supp. 540. But where one of two joint debtors dies and the obligation survives against the other, the debt may be set-off in an action against the survivor.   *Wells* v. *Teall,* 5 Blackf. (Ind.) 306; *McCarthy* v. *Sleight,* 114 Mich. 182, 72 N. W. 165.   It is under this rule, that a debt due the defendant as a surviving partner may be set-off against a demand on him in his own right, *Slipper* v. *Stidstone,* 5 T. R. 493, and *vice versa, French* v. *Andrade,* 6 T. R. 582.   At common law the death of a joint promissor left the survivor liable for the whole debt; and this rule, which applies to husband and wife when joint debtors, still obtains in this jurisdiction.   *Hogan* v. *Sullivan,* 79 Vt. 36, 64 Atl. 234; G. L. 1826. It appeared below that the wife of the plaintiff died before the trial, but it did not appear that she died before the writ in this suit was served, which was on September 29, 1917.   Under our statute (G. L. 1809) a claim cannot be used as an offset unless it was due and payable when the writ was served.   When did the defendant's debt become due and payable?   Not at the date of Mrs. Congdon's death, but at the time of the settlement in June,

1917.   It did not arise from the death of the wife, nor was it affected by that event.   It was the same debt all the time.   In the circumstances, it was a proper offset in this suit, and the exclusion of the evidence offered was reversible error.

[10]   After the verdict, as we have seen, the defendant filed his declaration in account pursuant to the agreement above referred to, judgment to account was rendered, a hearing was had, and the court found that there was nothing due the defendant on account of the matter referred to, and rendered judgment for the amount of the verdict.   The defendant excepted both to the findings and the judgment.   He now argues that the judgment to account cut off the plaintiff's opportunity to litigate the question of the relation of the parties under the farm trade, and that it was conclusive thereon in the defendant's favor, citing several of our early cases in support of his claim.   This used to be the law, but has not been since the passage of the Act of 1872, now found in G. L. 2086, wherein it is provided that notwithstanding the judgment to account, any defence may be made before the auditor that might have been answered in bar of the action. This act was passed long before such cases were heard by the court as authorized by the Act of 1908, found in G. L. 2087, and does not in terms apply to such hearings; but we think it should be construed to apply to hearings before the court as well as hearings before an auditor, and we hold that it does.

[11]   The plaintiff testified that the contract under which he carried on the farm for the defendant was to this effect:   The defendant was to pay the expenses, including those incurred in the support of the plaintiff and his family, and at the end of the season, if there was any profit, it was to be equally divided between them.   The court found that the contract was as testified to by the plaintiff, and as all agreed that there was no profit but a loss from the running of the farm there was nothing due the defendant therefrom.   The finding was sufficiently supported by the evidence referred to, and the exception thereto is not sustained.

*Judgment reversed, and cause remanded.*